**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JENNIFER F.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-3663** |
| **COMMISSIONER, Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

**MEMORANDUM OPINION**

On November 7, 2025, Plaintiff Jennifer F. petitioned this Court to review the final decision of the Social Security Administration (SSA or the Commissioner) denying her claim for benefits.[1] ECF No. 1. Pending before the Court is Plaintiff's appeal, which is fully briefed. ECF Nos. 10, 14–15. No hearing is necessary. Local Rule 105.6 (Dec. 1, 2025 D. Md.). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, and for the reasons set forth below, the Commissioner's decision is affirmed.

## I. BACKGROUND

The instant action is Plaintiff's third appeal in connection with her claims for benefits. ECF Nos. 1; 6-2 at 193–196, 781. Following an overview of the procedural history of this case and the applicable statutory framework is a discussion of the administrative decision at issue in this appeal.

---

[1] This case was referred to a United States Magistrate Judge with the parties' consent and reassigned to the undersigned on August 6, 2026. ECF Nos. 2–4; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

### A. Procedural History

In 2014, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. § 401 *et seq*. and 42 U.S.C. § 1381 *et seq*., alleging a disability onset date of January 1, 2012. ECF No. 6-1 at 136–137, 356, 363.[2] Plaintiff asserted that she was disabled within the meaning of the Act because of refractory depression and sudden hearing loss in her left ear. *Id.* at 112, 124. After the SSA denied Plaintiff's applications for benefits, she sought reconsideration, and the Commissioner affirmed its determinations on July 22, 2015. *Id.* at 122, 135–137, 149, 162, 205–206, 208. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on July 12, 2017. *Id.* at 65–111, 214. On November 27, 2017, the ALJ rendered a decision (ALJ Decision I) in which she found that Plaintiff was not disabled within the meaning of the Act. *Id.* at 169–184. Plaintiff requested further review, and on August 29, 2018, the Appeals Council remanded the case to the same ALJ. *Id.* at 192–194, 273.

The ALJ held a hearing and rendered a decision on March 7, 2019, in which she again found that Plaintiff was not disabled within the meaning of the Act (ALJ Decision II). *Id.* at 20–29, 37–63. Plaintiff requested further review, which the Appeals Council denied on March 2, 2020. *Id.* at 9. On April 30, 2020, Plaintiff filed suit in this Court seeking review of ALJ Decision II. ECF No. 6-2 at 193–196. On September 28, 2021, this Court remanded the case to the Commissioner for further proceedings. *Id.* at 206–209; *Jennifer F.* v. *Saul*, Civil Action JMC-20-1118, 2021 WL 11720832, at *1 (D. Md. Sept. 28, 2021). On February 7, 2022, the Appeals Council vacated ALJ Decision II and remanded Plaintiff's case to a different ALJ. ECF No. 6-2 at 214.

---

[2] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

The second ALJ held a hearing and rendered a decision on July 11, 2022, in which she found that Plaintiff was not disabled within the meaning of the Act at any time through June 30, 2015, the date she was last insured, but became disabled on March 7, 2021 (ALJ Decision III). *Id.* at 120–138, 151–192. Plaintiff requested further review, which the Appeals Council denied on June 1 and 8, 2023. *Id.* at 104–105, 111–112. On July 31, 2023, Plaintiff again filed suit in this Court seeking review of ALJ Decision III. *Id.* at 781; *Jennifer F.* v. *Commissioner, Social Security*, MJM-23-2063 (D. Md.) (ECF No. 1). On April 24, 2024, this Court remanded the case to the Commissioner with the parties' consent. ECF No. 6-2 at 781; *Jennifer F.*, MJM-23-2063 (ECF No. 18). On May 31, 2024, the Appeals Council vacated the unfavorable portion of ALJ Decision III and remanded the case to a third ALJ to address identified issues. ECF No. 6-2 at 781–783. Specifically, the Appeals Council noted that ALJ Decision III did "not contain an adequate evaluation of limitations in functioning resulting from the claimant's hearing loss," and that the "decision [did] not contain an adequate evaluation of the claimant's residual functional capacity," including how the ALJ evaluated medical opinion evidence and determined that being off[] task ten percent of the workday would accommodate Plaintiff's medically determinable impairments. *Id.* at 781–782. The Appeals Council directed the ALJ to give further consideration on remand to Plaintiff's hearing loss and residual functional capacity prior to March 7, 2021. *Id.* at 783.

The third ALJ held a hearing and rendered a decision on March 10, 2025, in which she concluded that Plaintiff was not disabled within the meaning of the Act from January 1, 2012, the alleged onset date, through March 7, 2021 (ALJ Decision IV). *Id.* at 699–722, 732–757. Plaintiff again requested further review, which the Appeals Council denied on September 11, 2025. *Id.* at 647. ALJ Decision IV therefore constitutes the final, reviewable decision of the SSA. *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

### B. Statutory Framework

The Act authorizes Disability Insurance Benefit payments to every insured individual who "is under a disability." *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)). The Act also authorizes Supplemental Security Income payments to "persons who have a 'disability.'"[3] *Barnhart* v. *Thomas*, 540 U.S. 20, 21 (2003). Both of these programs define "disability" as being "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). To receive benefits under the SSA, "a plaintiff has the burden of proving disability." *Britt* v. *Saul*, 860 Fed. Appx. 256, 257 (4th Cir. 2021).

Federal regulations require an ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "The applicant bears the burden of production and proof during the first four steps of the inquiry." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At step five, "the burden shifts to the Commissioner to prove, by preponderant evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the

[3] The primary difference between these two disability benefit programs is the applicant's employment history and financial resources. *Delk* v. *Colvin*, 675 Fed. Appx. 281, 282 (4th Cir. 2017) (explaining that the Disability Insurance Benefits program provides benefits to individuals "who have contributed to the program while employed," whereas Supplemental Security Income provides benefits based on financial need); *see also* 42 U.S.C. §§ 423(a)(1), 1381a, 1382.

claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies step three, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5." *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e); 416.920(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Residual functional capacity is defined as "the most [the claimant] can still do despite [their physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of the disability assessment. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Monroe*, 826 F.3d at 180.

**C. ALJ Decision IV**

At step one of the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. ECF 6-2 at 702. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease, thyroid disorder, arthropathies, vertigo, panic disorder with agoraphobia, and major depressive disorder." *Id.* at 703 (bold removed). At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."[4] *Id.* at 703–704 (bold removed). Before continuing to the step four of

---

[4] Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments. Within Appendix 1, "Adult Listings 12.00 *et seq*. . . . pertain to mental impairments, and consist of (1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,' which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a history of

the sequential evaluation, the ALJ determined that Plaintiff had the residual functional capacity to:

> perform light work . . . except can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Can never climb ladders, ropes, or scaffolds. Must avoid concentrated exposure to loud nose and to vibration, and all exposure to hazards. Can occasionally interact with co-workers, supervisors, and the public. Can make simple work[]place decisions, and tolerate occasional changes in the work, and work setting. Can maintain pace for non-production work, meaning no assembly line work, or work requiring meeting strict quotas.

*Id.* at 709 (bold removed). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work since the alleged disability onset date. *Id.* at 720. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed. *Id.* at 721. Ultimately, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act from the alleged disability onset date through March 7, 2021, and that her claims for benefits were properly denied. *Id.* at 722.

## II. DISCUSSION

On appeal, Plaintiff argues that (1) the ALJ failed to follow the Appeals Council's remand order, (2) the ALJ's residual functional capacity determination was deficient, (3) the ALJ erroneously evaluated the vocational expert's testimony, and (4) the ALJ erred in (a) her evaluation of medical opinion evidence, (b) severity determination with respect to Plaintiff's left-side hearing loss, and (c) step-five determination. ECF No. 10 at 8–49. Following discussion of the applicable standard of review, each argument is addressed in turn below.

---

ongoing medical treatment and marginal adjustment." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020). The listing of impairments found in Appendix 1 is incorporated into the evaluation criteria for Supplemental Security Income benefits. 20 C.F.R. § 416.925.

### A. Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt*, 860 Fed. Appx. at 259 (citing 42 U.S.C. § 405(g)).[5] The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence." *Id*. Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence."). The phrase "substantial evidence" is a "term of art" that "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek* v. *Berryhill*, 587 U.S. 97, 102-103 (2019) (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). "Meaningful review is frustrated—and remand necessary—only where [the Court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted); *see also Mascio*, 780 F.3d at 636-637 (an "elaborate or even sophisticated" explanation of the ALJ's findings is not required).

---

[5] After a hearing to determine an individual's eligibility for Supplemental Security Income benefits, the Commissioner's final determination is subject to the same judicial review as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

**B. Appeals Council Remand Order**

"Federal courts are split on the issue of whether an ALJ's failure to comply with an Appeals Council remand order may serve as an independent ground for reversal," and the United States Court of Appeals for the Fourth Circuit "has not definitively addressed the issue." *Nicholas* v. *Kijakazi*, Case No. 3:20-cv-00531, 2021 WL 3878291, at *10 (S.D.W. Va. Aug. 12, 2021) (collecting cases). Several decisions of this Court have concluded that such a failure requires remand. *E.g.*, *Christopher M.* v. *Bisignano*, Civil Action No. DRM-24-2922, 2026 WL 352985, at *4 (D. Md. Feb. 9, 2026) ("To be sure, 20 C.F.R. § 404.977(b) requires that ALJs comply with a remand order from the Appeals Council, and failing to do so constitutes a reversible error."); *Salvetti* v. *Astrue*, Civil Action No. WGC-09-2576, 2011 WL 6739578, at *11 (D. Md. Dec. 21, 2011) ("A remand is warranted since the ALJ failed to follow the instructions of the Appeals Council."); *but see Yonek* v. *Astrue*, Civil Action No. TMD 09-2905, 2011 WL 1231154, at *2 (D. Md. Mar. 28, 2011) (noting that "the failure of an ALJ to follow the precise dictates of an Order of Remand from the Appeals Council does not automatically warrant a remand"). Regardless of the conflicting authority, Plaintiff's argument that the ALJ failed to follow the Appeals Council's order does not support remand. The ALJ explicitly identified the Appeals Council's directives and engaged in the required analysis of Plaintiff's reported hearing loss and residual functional capacity. ECF Nos. 6-2 at 699–700, 703, 709–720; 10 at 8–9.

The ALJ noted that although the record reflected reports of "decreased left side hearing," there was no medical evidence that . . . [it] resulted in more than minimal limitation in [Plaintiff's] ability to perform work-related activities . . . prior to March 7, 2021." ECF No. 6-2 at 703. ALJ Decision IV includes a review of the relevant evidence that reflects Plaintiff's subjective complaints, examinations, and testing results. *Id.* at 703, 710–711, 717. The ALJ noted that examinations of Plaintiff's ear and hearing in 2013 and 2015 were "unremarkable."

*Id.* at 703. She also noted that while an audiological evaluation in September 2014 revealed "mild sloping to profound sensorineural hearing loss" in Plaintiff's left ear and "normal hearing with excellent word recognition scoring in her right ear," a subsequent hearing evaluation in 2015 was normal, and a 2018 evaluation revealed no decreased hearing. *Id.* The ALJ therefore concluded that any hearing loss was non-severe and she considered all impairments, both severe and non-severe, when assessing Plaintiff's residual functional capacity. *Id.* Indeed, the ALJ's residual functional capacity determination includes a limitation that Plaintiff "must avoid concentrated exposure to loud noise and to vibration" (*id.* at 709), and the ALJ explained the basis for such a limitation (*id.* at 719).

With respect to the ALJ's residual function capacity determination, ALJ Decision IV does not contain the 10 percent off-task limitation that the Appeals Council highlighted in its remand Order. *Id.* at 709, 782–783. The other aspects of the ALJ's residual functional capacity determination adequately address the Appeals Council's directives. *Id.* at 709–720, 782–783. Specifically, the ALJ discussed the medical consultants' opinions, identified the weight given to each opinion, and the reasons for assigning that weight. *Id.* at 717–719, 782. The ALJ also identified supporting evidence and explained the basis for exertional, nonexertional, and environmental limitations in her residual functional capacity determination. *Id.*; *see also* II.C., *infra*. The ALJ therefore did not err in addressing the Appeals Council's remand order.

### C. Residual Functional Capacity

A claimant's residual functional capacity is determined using a two-step process. The ALJ must first "identify the individual's functional limitations . . . and assess [their] work-related abilities on a function-by-function basis." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-9p), 61 Fed. Reg. 34,474-01, 34,475 (July 2, 1996). "The function-by-function approach asks the ALJ to consider a

claimant's specific 'exertional and nonexertional functions.'"[6] *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. 2018) (quoting SSR 96-8p, 61 Fed. Reg. at 34,476). The ALJ then expresses a claimant's residual functional capacity "in terms of the exertional levels of work," such as "sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R. § 404.1567 (defining the requirements of each exertional level of work). While the SSA guidelines require a "function-by-function" analysis to determine a claimant's residual functional capacity, the Fourth Circuit has held that this analysis does not need to be explicit. *Mascio*, 780 F.3d at 636 (rejecting "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis."). Instead, the key consideration is whether the ALJ identified the evidence relied upon in determining the claimant's residual functional capacity and built "an accurate and logical bridge from the evidence to that conclusion." *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted). A proper residual functional capacity analysis "has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The second component of this analysis, "the ALJ's logical explanation, is just as important as the other two." *Id.*; *see also* SSR 96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."). Remand is appropriate when the ALJ's residual functional capacity analysis "contains too little logical explanation for . . . meaningful appellate review." *Thomas*, 916 F.3d at 312.

[6] "Exertional capacity . . . defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996). "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking, understanding and remembering instructions, and tolerance of temperature extremes. *Id.*

Plaintiff contends that the ALJ failed to build a logical bridge between the evidence and her residual functional capacity determination. ECF No. 10 at 26. The undersigned disagrees. The residual functional capacity section of ALJ Decision IV is thorough and detailed. ECF No. 6-2 at 709–720. The ALJ summarized the evidence of record, including Plaintiff's testimony and other subjective statements; identified what weight she afforded to the evidence and why; and explained how she determined the exertional and nonexertional limitations in Plaintiff's residual functional capacity. *Id.* Far from being "left to guess," *Mascio*, 780 F.3d at 637, ALJ Decision IV clearly lays out how the evidence supports the ALJ's conclusions. Plaintiff's arguments to the contrary are unavailing.

Plaintiff posits that the ALJ's residual functional capacity determination was based solely on objective medical evidence and not on her subjective statements. ECF No. 10 at 25. When evaluating a claimant's subjective symptoms, an ALJ is required to use the two-step framework set forth in 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims (SSR 16-3p), 82 Fed. Reg. 49,462-03 (Oct. 25, 2017). *Arakas* v. *Commissioner, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). Under this framework, the ALJ must first "determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id.* (quoting 20 C.F.R. § 404.1529(b); 82 Fed. Reg. at 49,463). Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 82 Fed. Reg. at 49,464; *see also Arakas*, 983 F.3d at 95; 20 C.F.R. §§ 404.1529(c), 416.929(c). Consideration of the intensity, persistence, and limiting effects of the symptoms requires the ALJ to examine the entire case record, including the objective medical evidence; the claimant's statements about the intensity, persistence, and limiting effects of symptoms;

statements and other information provided by medical sources and other persons; and any other relevant evidence in the case record. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 82 Fed. Reg. at 49,465-49,466. The ALJ must consider all of the available evidence and cannot discredit a plaintiff's subjective statements simply because they are not supported by objective medical evidence. *Craig*, 76 F.3d at 595 (citing 20 C.F.R. §§ 404.1529(c)(2)-(3), 416.929(c)(2)-(3)). Here, the ALJ applied the two-step process; reviewed Plaintiff's testimony at multiple hearings, documentary evidence regarding Plaintiff's ability to function, and medical evidence; and explained why she concluded that Plaintiff's subjective statements were entitled to partial weight. ECF No. 6-2 at 710–720. Plaintiff's argument to the contrary does not support remand.

Plaintiff further contends that the ALJ's residual functional capacity determination did not adequately address her moderate concentration, persistence, and pace limitation. ECF No. 10 at 33–35. Specifically, Plaintiff argues that the ALJ did not include "an off[-]task finding" and did not address "Plaintiff's need for unscheduled breaks." *Id.* at 35. Here, the ALJ concluded that Plaintiff had a moderate limitation based on Plaintiff's 2015 function report and testimony in 2022 and 2025 that she had difficulty concentrating, as well as intermittent reports of anxiety and panic attacks in the medical record evidence. ECF Nos. 6-1 at 440; 6-2 at 707–708, 710, 713–716. The ALJ also noted that in 2017, 2019, and 2021, Plaintiff was found to have normal attention and concentration, and that her mood and anxiety were controlled with medicine. *Id.* at 707–708, 714–716. The ALJ explained that a moderate limitation was "consistent with the claimant's history of panic attacks when around a lot of people, as well as her own reports that she cannot read books or newspapers because of difficulty with focus and concentration." *Id.* at 717. In her residual functional capacity determination, the ALJ concluded that Plaintiff could "maintain pace for non-production work, meaning no assembly line work, or work requiring meeting strict quotas." *Id.* at 709 (bold removed). The ALJ gave "great weight to the State

agency psychological consultant's mental assessment at the reconsideration (G. Grubbs, Psy.D.)." *Id.* at 717–718. Dr. Grubbs concluded, in pertinent part, that Plaintiff was "[n]ot significantly limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." ECF No. 6-1 at 145.

Plaintiff correctly notes that the ALJ's residual functional capacity determination does not address her asserted need for time off task and unscheduled breaks. ECF Nos. 6-2 at 707–708; 10 at 35–36. Failure to do so, however, was not error. These accommodations do not feature in the ALJ's assessment of Plaintiff's mental limitations. "Instead, the ALJ found that [Plaintiff] could perform work that would not require a fast pace or production quotas such as would customarily be found on an assembly line, which . . . accounts for her moderate limitation in" concentrating, persistence, and pace. *Tamera L.-H.* v. *Kijakazi*, Civil Action No. TJS-21-883, 2022 WL 872524, at *3 (D. Md. Mar. 24, 2022) (internal quotation marks and citation omitted); *see also Brian S.* v. *Saul*, No. 3:20CV065 (JAG), 2021 WL 748087, at *13 (E.D. Va. Feb. 10, 2021) ("Plaintiff's argument is factually flawed—the ALJ did not find that Plaintiff would be off task for fifteen percent or more during an eight-hour workday."), *report and recommendation adopted*, 2021 WL 744149 (E.D. Va. Feb. 25, 2021). There is therefore no error, reversible or otherwise. *Tamera L.-H.*, 2022 WL 872524, at *3; *Brian S.* v. *Saul*, 2021 WL 748087, at *13.

**D. Vocational Expert Testimony**

Plaintiff challenges the ALJ's failure to consider additional hypothetical questions that her counsel posed at the hearing. *Id.* at 45–46. ALJs are afforded "great latitude in posing hypothetical questions." *Koonce* v. *Apfel*, No. 98-1144, 1999 WL 7864, at *5, 166 F.3d 1209 (Table) (4th Cir. Jan. 11, 1999). Hypothetical questions need only be "based on substantial evidence and accurately reflect a plaintiff's limitations." *Sarah H.* v. *Commissioner, Soc. Sec.*

*Admin.*, Civil Action No. SAG-20-3358, 2021 WL 4426875, at *1 n.1 (D. Md. Sept. 27, 2021). An ALJ does not err in failing to consider the answer to a hypothetical question that the ALJ found to be unsupported by the record. *Russell* v. *Barnhart*, 58 Fed. Appx. 25, 30 (4th Cir. 2003). As this Court has explained previously, the ALJ is not required to adopt limitations suggested by hypothetical questions posed by plaintiff's counsel and the responsive answers of a vocational expert. *E.g.*, *Andre J.* v. *Dudek*, Civil Action No. CDA-23-2723, 2025 WL 722665, at *10 (D. Md. Mar. 6, 2025).[7]

**E. Miscellaneous Arguments**

Plaintiff's remaining scattershot arguments in support of remand are similarly unavailing. ECF No. 10 at 10–24, 37–38. First, Plaintiff contends that the ALJ erred in her evaluation of medical opinion evidence. ECF No. 10 at 10. An ALJ's determination as to the persuasiveness of a medical opinion "generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies'" or failed to "give a sufficient reason for the weight afforded a particular opinion." *Dunn* v. *Colvin*, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (internal citations omitted). No such inconsistencies or explanatory insufficiencies exist here. The undersigned finds no error in the ALJ's assessment of medical opinion evidence, which she catalogued and explained what weight was accorded to each opinion and why. ECF No. 6-2 at 717–719.

Second, Plaintiff's arguments with respect to the ALJ's evaluation of medical opinion evidence and assessment of Plaintiff's physical and mental impairments essentially boil down to

---

[7] Plaintiff's argument that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles, a Social Security Administration resource that "list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations," *Pearson* v. *Colvin*, 810 F.3d 204, 205 n.1, 207 (4th Cir. 2015), reiterates her challenges to the ALJ's residual functional capacity determination, which the undersigned has rejected. ECF No. 10 at 46–47; II.C., *supra*.

an impermissible request that this Court reweigh evidence and reach Plaintiff's desired finding of disability prior to March 7, 2021. ECF No. 10 at 10–24; *Fiske* v. *Astrue*, 476 Fed. Appx. 526, 527 (4th Cir. 2012). The undersigned declines the invitation. This Court does "not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary." *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id.* (internal quotation marks and citation omitted).

Third, Plaintiff's argument that the ALJ erred in concluding that hearing loss in Plaintiff's left ear was non-severe does not warrant remand. ECF No. 10 at 13–14. The ALJ outlined the evidence that supported her conclusion that any loss of hearing did not result is more than a minimal limitation in Plaintiff's ability to perform work-related activities prior to March 7, 2021. ECF No. 6-2 at 703. Plaintiff's arguments to the contrary again constitute an impermissible request for this Court to reweigh evidence. *Fiske*, 476 Fed. Appx. at 527; *Craig*, 76 F.3d at 589. Plaintiff's contention that the findings in prior ALJ decisions that determined Plaintiff's alleged left-side hearing loss was a severe impairment (ECF No. 10 at 13–14) fails to recognize that the prior ALJ decisions with respect to Plaintiff's alleged disability prior to March 7, 2021, were vacated and thus the conclusions contained therein are no longer controlling. ECF Nos. 6-1 at 192–194 (vacating ALJ Decision I); 6-2 at 214 (vacating ALJ Decision II), 781–782 (vacating in part ALJ Decision III); *Patricia C.* v. *Kijakazi*, Civil Action No. BPG-20-3530, 2021 WL 6931477, at *2 (D. Md. Dec. 8, 2021) (holding that the ALJ did not err by not discussing a vacated ALJ decision or not assigning it any weight because it was not a final decision), *aff'd sub nom.*, 2023 WL 8945826 (4th Cir. Dec. 28, 2023). Plaintiff cannot seek review of an unfavorable decision and simultaneously seek to retain favorable portions of the challenged

decision. The ALJ properly re-evaluated the evidence and issued a *de novo* opinion. *Roger B.* v. *Kijakazi*, Civil Action No. BAH-21-2888, 2022 WL 16701201, at *4 (D. Md. Nov. 3, 2022). Where an ALJ's decision applies the correct legal standards and is supported by substantial evidence, it must be affirmed. *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021). Such is the case with respect to the third ALJ's evaluation of Plaintiff's alleged left-side hearing loss, regardless of the conclusions of the now-vacated prior ALJ decisions.

Finally, Plaintiff's argument that the ALJ erred at step five of the sequential evaluation process also fails. ECF No. 10 at 37–38. Plaintiff contends that the vocational expert identified only one "Reasoning Level 1" job that the Plaintiff could perform, which "negate[s] the [ALJ's] finding at Step 5 of the [sequential evaluation process] that significant numbers of jobs exist for the claimant." ECF No 10 at 38 (bold removed). Assuming without deciding that Plaintiff is capable only of performing a "Reasoning Level 1" job and that only one of the jobs that exist in significant numbers in the national economy meets that criterion, there would be no reversible error. This Court has held that the "ALJ need only identify a single job within the claimant's capacity that exists in significant numbers in the national economy at step five." *Howard W.* v. *O'Malley*, Civil Action No. CDA-23-687, 2024 WL 1194488, at *4 (D. Md. Mar. 20, 2024) (internal quotation and alteration omitted).

## III. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. A separate Order follows.

Date: August 21, 2026

/s/
Erin Aslan
United States Magistrate Judge